UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:
SAMUEL V. THOMAS                         Case No. 11-10639
                                                       11-10641
SAMUEL V. THOMAS                         Bankruptcy No. 10-58206
                                         Adversary No. 10-5909
v.
                                         Honorable Patrick J. Duggan
WAYNE COUNTY TREASURER ET AL.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 23, 2011.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
           U.S. DISTRICT COURT JUDGE

This matter is before the Court as a *pro se* appeal from the United States Bankruptcy Court for the Eastern District of Michigan. Plaintiff-Appellant Samuel Thomas appeals the Honorable Marci B. McIvor's orders dismissing the adversary case he brought against Defendant-Appellees the Wayne County Treasurer, the City of Detroit, Amru Meah, Abdul Aquil, Luther Worthman, and ABC Demolition Company. Thomas also appeals the bankruptcy court's orders denying his motion for reconsideration of this decision, granting the Wayne County Treasurer's motion for relief from stay, and denying confirmation of

his Chapter 13 plan.[1]  The matter has been fully briefed and, on August 18, 2011, the Court issued a notice informing the parties that it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons stated below, the Court affirms the decisions of the bankruptcy court.

## I. Factual and Procedural Background

The Sixth Circuit aptly summarized the facts of this case:

Thomas is the owner of property in Detroit, on which the former Studebaker Building once stood.  On March 3, 2000, after providing Thomas with notice and an opportunity to be heard, the Detroit City Council passed a resolution declaring the Studebaker Building to be a "dangerous building," as defined in the City's Dangerous Building Ordinance, Detroit, Mich. Ordinance 17-98, § 12-11-28.0, *et seq.* (July 1, 1998).  The resolution authorized the building's demolition.  Thomas did not request a deferral of the demolition or appeal the Council's decision.  For the next five years, neither Thomas nor the City took any further action regarding the property.

On the night of June 20, 2005, a fire destroyed the building.  Immediately thereafter, the City of Detroit Buildings and Safety Engineering Department (BSE) inspected the building's remains.  BSE is a part of the executive branch of Detroit's City government. Under the Detroit City Code, BSE is charged with "administer[ing] and enforc[ing] all laws, ordinances and regulations relating to the use of land ('zoning')" as well as "all other laws and ordinances regulating the development, maintenance and use of real property in the city."  Detroit, Mich. Home Rule Charter, §§ 7-401, 7-404 (2007).  Defendant Amru Meah is BSE's director.

---

[1] Thomas's notice of appeal does not identify which orders he is appealing, as it states only that he is appealing the bankruptcy court's order dated February 14, 2011.  This is the date his notice of appeal was filed, and the bankruptcy court did not enter an order on that date.  However, Plaintiff's brief lists the orders that are the subject of his appeal.  While Plaintiff's notice of appeal is not in strict compliance with the court's filing requirements, this is not a jurisdictional defect depriving the Court of power to hear this appeal.  *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 922 (7th Cir. 2004).  In any event, the relevant parties have all filed briefs with this Court, and therefore cannot be said to lack notice of the appeal.

2

BSE determined the building had collapsed onto a public right-of-way and needed to be demolished immediately.  On June 22, 2005, Meah wrote to the Detroit City Council and to Thomas, calling the site "an immediate danger affecting the health, safety and welfare of the public," and stating, "under the authority of Ordinance 290-H, we are taking emergency measures to have this building or portions thereof removed with the cost assessed against the property."  Thomas wrote to the City the same day, stating he had retained Ferrous Processing and Trading Company to handle the "removal, transport and disposal" of various materials from the property.

On July 6, 2005, Meah wrote back to Thomas, stating that the demolition needed to be completed by a contractor possessing a Class A Wrecking License issued by BSE.  Ferrous Processing apparently lacked such a license.  Meah warned that Thomas's failure to retain an appropriate contractor would "result in legal action."  He noted, "[i]f the City of Detroit has to demolish this structure, the cost will be assessed against the property and court action will be pursued to collect all cost for this demolition."  Meah gave Thomas ten days to demolish the building once the Fire Department released the site.

On July 13, 2005, Defendant Abdul Aquil, assistant chief of building inspections for BSE, also wrote to Thomas.  He stated that the "site must be secured and removal of debris must commence by July 15, 2005"; that "failure to proceed by this date will result in this Department immediately securing the services of a licensed demolition contractor and removing the debris"; and that "[t]he cost of this action will be assessed against the property."

Thomas wrote to Aquil on July 18, 2005, again stating his intent to clean up the site himself, using "the salvageable metal and bricks on the site" to finance the project.  He asked for an additional 10 to 15 days to "sort out these issues[.]"

Aquil responded on July 26, 2005, writing that the "site must be secured, the required permits obtained and removal of the debris absolutely must commence by July 29, 2005."  He continued, "[f]ailure to proceed by this date will result in this Department securing the services of a licensed demolition contractor and removing the debris[.]"  This letter again warned that "[t]he cost of this action will be assessed against the property."

Thomas wrote back on July 29, 2005, stating he had not received Aquil's latest letter until July 28, 2005, one day before the City's new deadline for removal.  He also asserted that the City was acting unfairly by not responding to his request to use the proceeds from salvageable materials to pay for the clean-up.  The City recorded a *lis pendens* against the property on the same day.

> Apparently hearing nothing further from Thomas, BSE hired Defendant ABC Demolition, a licensed contractor, to demolish the site and remove the debris. It appears the demolition process was completed by October 7, 2005. The City spent $485,351.50 to clear the site.

*Thomas v. City of Detroit*, 299 Fed. App'x 473, 474-75 (6th Cir. 2008).

On February 1, 2006, Thomas filed an action in the Eastern District of Michigan, Case No. 06-10453, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Thomas alleged that the City, acting through its officials, placed unreasonable pressure on him to immediately clean up the site and imposed an artificially tight deadline for doing so. He further asserted that the City overcharged him for the demolition and deprived him of salvageable bricks and steel from the property worth at least $2 million. The City filed a counterclaim to recover its demolition costs.

District Judge Marianne Battani subsequently issued an opinion and order granting summary judgment for the Defendants as to Thomas's claims and granting summary judgment for the City on its counterclaim. Judge Battani concluded that Thomas had failed to offer evidence indicating that he was entitled to the claimed salvage value of materials from the site. *Thomas v. City of Detroit*, No. 06-10453, 2007 U.S. Dist. LEXIS 13520, at *30-32 (E.D. Mich. Feb. 28, 2007). The opinion also concluded: "There is no dispute that the City has the authority to assess the cost of the demolition against the property, and because there is no basis to find that the City exercised its statutory authority in an unlawful manner, the Court finds there is no basis to deny the City's counterclaim." *Id.* at *39. This decision was affirmed on appeal. *Thomas,* 299 Fed. App'x at 479, *cert. denied*, 129 S. Ct. 1683 (2009).

Thomas returned to the district court, now representing himself, and filed a motion for relief from the order pursuant to Federal Rule of Civil Procedure 60. This motion was denied, and Thomas's appeal of this decision is currently pending in the Sixth Circuit.

In June 2009, the Wayne County Treasurer filed a petition in Wayne County Circuit Court seeking to foreclose on the property for failure to pay real property taxes or the demolition costs that had been assessed against the property. Thomas filed objections in an attempt to halt foreclosure, arguing that he was not credited for the value of salvaged material removed from the property. Judge Virgil Clark Smith denied Thomas's challenge to the petition and his motion for reconsideration. An order was entered on June 15, 2010, granting the petition.

On June 2, 2010, Thomas filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. On June 17, 2010, he filed an Adversary Complaint, alleging that the City's lien was invalid because he was overcharged for demolition services and because he was entitled to recoupment based on the proceeds of salvageable property removed from the land. The Wayne County Treasurer moved to dismiss the proceeding, arguing that the doctrine of *res judicata* barred Thomas's claim as a result of the dismissed district court case. Defendants Worthman and ABC Demolition moved to dismiss the proceeding for the same reasons. At a hearing held on September 21, 2010, the bankruptcy court granted these motions to dismiss. The court issued orders memorializing these decisions the next day. Thomas moved for reconsideration, and the bankruptcy court denied his motion at a hearing held on October 28, 2010. The Treasurer filed a motion for relief from the automatic stay, and the bankruptcy court granted the motion in an order dated October 29,

5

2010. On December 16, 2010, Aquil, Meah, and the City of Detroit moved to dismiss the claims against them under the doctrine of *res judicata*. The bankruptcy court issued an opinion and order granting this motion on February 1, 2011.

Because Thomas had planned to fund his Chapter 13 plan with the expected proceeds of the adversary proceeding, the bankruptcy court entered an order on February 11, 2011 denying confirmation of the plan and dismissing the bankruptcy case. Thomas filed his *pro se* notice of appeal on February 14, 2011.

## II. Standard of Review

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. *In re Eastown Auto Co.*, 215 B.R. 960, 963 (B.A.P. 6th Cir. 1998) (citing Fed. R. Bankr. P. 8013). Conclusions of law are reviewed *de novo*. *Id.* at 964.

## III. Argument and Analysis

### A. The Wayne County Treasurer's Subject Matter Jurisdiction Challenge

Appellee Wayne County Treasurer argues that because Thomas's notice of appeal was untimely, this Court lacks jurisdiction to hear appeal of the bankruptcy court's orders dismissing the Treasurer from the adversary proceeding and denying reconsideration of that decision. The Court disagrees. The district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). Federal Rule of Civil Procedure 54(b) applies in bankruptcy appeals, and provides that a judgment disposing of fewer than all claims or parties is final only if the court certifies the judgment under that Rule. *Settembre v. Fid. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009). The bankruptcy court did not dispose of all parties in the adversary proceeding

until February 1, 2011, when it dismissed the claims against the City of Detroit, Aquil, and Meah. As the previous orders dismissing the claims against the Wayne County Treasurer and denying the motion for reconsideration of that decision did not dispose of all parties, they were not final orders ripe for appeal. There is also no indication that the bankruptcy court certified these orders for immediate appeal pursuant to Rule 54(b). Thomas filed his notice of appeal within the fourteen-day period following the entry of the bankruptcy court's final order, as required by Federal Rule of Bankruptcy Procedure 8002(a). The Court therefore concludes that it has jurisdiction over the appeal with respect to claims made by Thomas against the Wayne County Treasurer.

The Treasurer contends that this Court lacks jurisdiction over Thomas's appeal of the bankruptcy court's order granting relief from the automatic stay. "An order which grants or denies relief from an automatic stay in bankruptcy is a final order." *In re Mentag*, 430 B.R. 439, 444 (E.D. Mich. 2010) (citing *In re Sun Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986)). The bankruptcy court entered its order lifting the stay as to the Wayne County Treasurer on October 29, 2010. To appeal the order, Thomas was required to file a notice of appeal within fourteen days of that date. He failed to do so. The Sixth Circuit has held that "the untimely filing of a notice of appeal deprives the district court of jurisdiction to review the bankruptcy court's order." *Considine v. Atkinson*, No. 98-6455, 1999 U.S. App. LEXIS 20347, at *3-4 (6th Cir. Aug. 18, 1999). The Court therefore lacks jurisdiction over the appeal of the bankruptcy court's order lifting the automatic stay.

**B. Dismissal of the Adversary Proceeding**

    **1. Res Judicata**

Appellees argue that the bankruptcy court properly dismissed Thomas's adversary proceeding under the doctrine of *res judicata*. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979). The doctrine applies where the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

### a. District Court Proceedings

The Court concludes that Judge Battani's grant of summary judgment in Thomas's original lawsuit bars his claims in the adversary proceeding. The decision addressed the merits of Thomas's claims, and there is no indication that jurisdiction was lacking. The court entered judgment for Appellees on the same date and this decision was subsequently affirmed on appeal. *Thomas,* 299 Fed. App'x at 479, *cert. denied*, 129 S. Ct. 1683 (2009).

The adversary proceeding is between the same parties or their privies. The only party here that was not a party to the district court suit is the Wayne County Treasurer, but the Treasurer is properly considered to be in privity with the City of Detroit. Privity is established where one party is the successor-in-interest to another. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577 (6th Cir. 2008). When Thomas failed to pay the demolition costs, they became a lien on the property pursuant to Michigan Compiled Laws

§ 125.541(6). This lien is collected in the same manner as real property tax liens. *Id.* If such taxes are not collected by March 1 in the year after they are levied, they are returned to the county treasurer for collection. Michigan Compiled Laws § 211.89a. Thus, when Thomas failed to pay the costs to the City by March 1, 2006, the Treasurer became obligated to collect them. As a successor to the City's right, the Treasurer is in privity with the City for *res judicata* purposes.

It is also clear that the issues raised by Thomas in the adversary proceeding were actually litigated in the district court suit. The district court's opinion concluded that Thomas had failed to offer evidence indicating that he was entitled to the claimed salvage value of materials from the site. *Thomas*, 2007 U.S. Dist. LEXIS 13520, at *30-32. The court also determined that the City had properly assessed the demolition costs against the property. *Id.* at *39. Because Thomas has already litigated these issues, he may not raise them again.

The fourth element of *res judicata*, the identity of the causes of action, is satisfied. The identity of the causes of action requires that the claims arose out of the same series of transactions or the same core of operative facts. *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002). It is abundantly clear that the adversary proceeding is based on the same facts as Thomas's original suit.

Because all four elements of *res judicata* are satisfied, the bankruptcy court did not err in dismissing the adversary proceeding. For the same reasons, the bankruptcy court did not err in denying Thomas's motion for reconsideration of that decision.

**b. Foreclosure Proceedings**

Thomas's claims against the Treasurer and the City are also barred by Judge Smith's ruling in the foreclosure proceeding. Thomas objected to foreclosure, arguing that the City's lien was void because he had been overcharged for demolition services and deprived of the value of salvageable property. Judge Smith rejected these objections, and later denied Thomas's motion for reconsideration at a hearing on May 20, 2010.[2] The Court believes that this constitutes a final decision on the merits of Thomas's claims. Although it appears that only the Treasurer and Thomas participated in the foreclosure proceedings, the City of Detroit enjoys privity with the Treasurer through its common interest in collecting the demolition costs. Thomas actually litigated his claims in the foreclosure proceeding, and the identity of the causes of action is again satisfied because the objections raised in foreclosure arose from the same facts as the adversary proceeding. The Court therefore concludes that the rejection of Thomas's objections during the foreclosure proceeding bars his attempt to relitigate these issues in the adversary proceeding. The bankruptcy court did not err in dismissing the adversary proceeding under principles of *res judicata*.

**c. Exceptions to Res Judicata**

Thomas asserts that the circumstances of this case justify an exception to the doctrine of *res judicata*. The Court disagrees. The doctrine of *res judicata* is not applied "when it

---

[2] Plaintiff argues for the first time on appeal that the order memorializing Judge Smith's decision was void because it was entered after the Chapter 13 bankruptcy case was filed, but arguments not raised in the bankruptcy court are waived on appeal. *In re Dow Corning Corp.*, 255 B.R. 445, 523 (E.D. Mich. 2000) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991)).

10

would result in manifest injustice to a party or violate an overriding public policy." *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977); *see also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 819 (6th Cir. 2010). The Sixth Circuit has found no manifest injustice where a party has enjoyed a "a full and fair opportunity to litigate the issue in the forum of its choice" and the second action does not afford "procedural opportunities" that were unavailable in the first. *Marlene Indus. Corp. v. NLRB*, 712 F.2d 1011, 1017 (6th Cir. 1983). The claims that are the subject of the adversary proceeding have been litigated and rejected twice before, and the Court cannot see how the interests of justice would be served by allowing Thomas to raise them a third time. Thomas has also failed to point to any overriding public policy that would justify application of an exception to *res judicata*. "The cases are few in which the public policy underlying the doctrine of *res judicata* has been found to be outweighed by countervailing considerations." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). The Supreme Court "has long recognized that '[public] policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 401, 101 S. Ct. 2424, 2429 (1981) (alteration in original) (quoting *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S. Ct. 517, 525 (1931)). Thomas has repeatedly failed to present any legal authority under which the City's actions were improper. The Court therefore concludes that principles of *res judicata* should be respected and applied in this case.

    **2. Collateral Estoppel**

Aquil, Meah, and the City of Detroit argue that the doctrine of collateral estoppel also bars the claims raised in the adversary proceeding. "Issue preclusion, or collateral estoppel, bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009). Four requirements must be met before collateral estoppel may be applied to bar litigation of an issue:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 589-90 (citing *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

The Court concludes that the doctrine of collateral estoppel bars Plaintiff's adversary proceeding. Plaintiff has previously raised his claims that the City overcharged him for demolition costs and that he was unlawfully deprived of valuable salvageable property. These claims were actually litigated and rejected. The determination of these issues was necessary to the outcome of the district court proceeding, as these claims were the subject of Thomas's complaint and that complaint was dismissed on its merits. The determination was also necessary in the foreclosure proceeding, as a finding that Thomas's claims had merit could have invalidated the lien upon which the Treasurer had based its petition for foreclosure. As noted above, both proceedings resulted in final judgments on the merits.

12

Thomas has enjoyed a "full and fair" opportunity to litigate these issues, having raised them in multiple forums and on appeal. The issues raised by Thomas have been decided against him in each forum, and the doctrine of collateral estoppel precludes him from litigating them again. The Court therefore concludes that the bankruptcy court did not err in dismissing the adversary proceeding.

**C. Denial of Confirmation of Thomas's Chapter 13 Plan**

Thomas argues that the bankruptcy court erred in denying confirmation of his chapter 13 plan. It appears that the overwhelming majority of Thomas's Chapter 13 plan was to be funded by the proceeds of the adversary proceeding.[3] Before the bankruptcy court may confirm a plan, it must find that the debtor will be able to make all payments under the plan and comply with the plan. 11 U.S.C. § 1325(a)(6); *see also In re Stewart*, 290 B.R. 302, 305 (Bankr. E.D. Mich. 2003) (holding that if the risk of default is too great, the court must deny confirmation). Upon dismissing the adversary complaint which was to be the source of nearly all plan payments, the bankruptcy court apparently determined that the proposed plan payments were unlikely to be made. The Court concludes that this determination was not clearly erroneous, and thus, the bankruptcy court did not err in denying confirmation of Thomas's proposed Chapter 13 plan.

## IV. Conclusion

---

[3] The proposed plan provided for twelve monthly payments of $200.00 per month plus a lump sum payment of $365,000.00 in month twelve. Thomas had testified that this lump sum payment would be obtained from the proceeds of his lawsuit against the City of Detroit. *See* Trustee's Objections to Confirmation of Chapter 13 Plan, Dkt. #28 ¶ 6, Bankruptcy Case No. 10-58206.

13

For the reasons stated above, the Court concludes that Judge McIvor did not err in dismissing Thomas's adversary proceeding, denying Thomas's motion for reconsideration, and denying confirmation of Thomas's Chapter 13 plan. The Court therefore affirms the bankruptcy court's decision.

**SO ORDERED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Mary Beth Cobbs, Esq.
Richardo I. Kilpatrick, Esq.
Marie Garian, Esq.
Hon. Marci B. McIvor

Samuel V. Thomas
27655 Abington Drive
Southfield, MI 48076